### August A. Schlegel

*v.*

### Charles J. Bott.

[Submitted March 27th, 1921.   Decided July 9th, 1921.]

1. A clause in a lease providing that the lessee should deposit with the lessor "before this lease becomes operative" $1,500 to secure the surrender of the premises at the expiration of the term in a state and condition as agreed in the lease, was intended to secure a deposit before the term began, and should be construed as meaning that the deposit was to be made before the first day of the term, and not to postpone the operation of the lease and an option to purchase until the deposit was made.

2. Failure by the lessor to secure the return of the premises in good condition from the lessee according to the lease, in view of the acceptance of rent by the lessor, does not avoid the lease and option to purchase contained therein, and is no defence in a suit for specific performance of the option to purchase by the lessee.

----

On bill, &c.

*Mr. Emil Walscheid,* for the complainant.

*Mr. William G. Hille* and *Mr. Harlan Besson,* for the defendant.

GRIFFIN, V. C.

The complainant asks that defendant be decreed to specifically perform an option agreement contained in two instruments, a lease and an agreement, both dated April 17th, 1917, to convey certain premises described in the bill, and the case turns on whether, at the time the complainant declared his option, the lease was valid and subsisting.

The complainant says it was; the defendant urges to the contrary, basing his contention on a clause in the lease, hereinafter set forth, that the complainant agreed to deposit $1,500 as security for the restoration of the premises in good condition, &c., at the end of the term, which clause complainant failed to comply with.

In the first clause, after the words "of letting and hiring and description of the premises," the lease provides that the term shall run from September 1st, 1917, for the term of five years and eight months, the rent reserved to be at the rate of $250 a month, for the first two years and eight months (to May 1st, 1920), and $275 a month for the remaining three years.

The second clause is in the usual form, giving the right of re-entry for non-payment of rent and breach of covenants therein contained.

In the third clause the complainant covenants to pay in advance the rent above reserved on the first day of each month.

The fourth clause provides for the surrender at the end of the term or determination of the lease in the common form.

The fifth clause is as follows:

"And the party of the first part covenants, that the said party of the second part, on paying the said rent, and performing the covenants aforesaid, shall and may peaceably and quietly have, hold and enjoy the said demised premises for the term aforesaid."

The seventh clause deals with repairs, &c.

The eighth clause is as follows:

"It is hereby mutually understood and agreed that this indenture is subject to the provisions of an agreement entered into between the parties hereto of even date herewith, giving said lessee an option to purchase the demised premises."

The ninth clause gives complainant an option of renewal for five years at an increase of $25 a month rent.

The tenth clause, under which the complainant claims the lease was and is void, is as follows:

"And the party of the second part hereby agrees before this lease becomes operative to deposit with the party of the first part the sum of fifteen hundred ($1,500) dollars as security for the surrender at the expiration of the term or terms hereunder of said premises in the state and condition as hereinabove agreed, which sum the lessor agrees to repay said lessee with interest at four per cent. per annum upon such restoration of said premises, or in the event that the lessee shall exercise the option to purchase, the said sum with interest shall be allowed on said purchase price."

The remaining clauses need not be referred to.

The agreement, after reciting the foregoing lease, states that in consideration of its execution and one dollar, interchanged, the defendant, for himself, &c., agrees to convey in fee, free from encumbrances, the premises described in the lease to the complainant on demand for $46,000, to be paid as therein provided "at any time during the life of the said indenture of lease above referred to, or the renewal thereof."

Provision is also made for crediting the $1,500 deposit referred to in the lease, with interest, on the purchase price.

At the time the lease was signed there was on the premises one Tonjes, occupying a portion, and paying $125 a month; a butcher and a boot-black, occupying other portions, paying $40 and $25 a month respectively. Tonjes, as I recall it, moved about the 1st of May, and the complainant entered into possession of the part vacated, paying rent at the rate of $250 a month for the whole of the premises, and collecting the rents from the butcher and the boot-black. My recollection of the testimony is that Mr. Schlegel was employed by some large hardware establishment in Union Hill, and it was suggested by Mr. Bott, or someone, that he rent the premises in question and start in business for himself. Whether this be so or not, Mr. Bott knew that the purpose of Mr. Schlegel was to enter into this line of business, which required a long lease, and thus a clause allowing him to make alterations and changes in the premises was inserted.

The complainant, upon entering into possession, commenced the making of very extensive alterations at considerable expense, which were completed about the middle of June. He laid in a large stock of hardware, which greatly depleted his capital, so that, on the 1st of September, 1917, he could not conveniently make the deposit of $1,500 required by the agreement, and it was not paid at that time or any other time. It was, as I recall it, discussed, but defendant did not insist upon payment, nor assert the invalidity of the lease by reason thereof. The complainant continued paying his rent under the terms of the lease, and, apparently, living up to all the terms contained therein, excepting the payment of $1,500 down to the 1st day of July, 1920, after he had declared his option. This, the complainant contends, with other circumstances, shows not only the defendant's interpretation of the contract, but also that he waived his claim to the $1,500 deposit.

The complainant, thinking that the two years and eight months' period for the payment of the $250 a month commenced in April, 1917, and terminated on the 1st day of December, 1919, on the last-mentioned date drew his check for $275, which was the sum payable under the terms of the lease for the last three years' period, and delivered the same to the defendant. The defendant told complainant that he had not read his lease; that the $275 period did not begin until the 1st of next May, and that his rent was still $250. This check for $275 was returned to the complainant, and the complainant thereupon drew a check for $250, delivered the same to the defendant, and it was accepted.

On May 1st, 1920, the rent, by the terms of the lease, became $275 a month. This sum the complainant paid to the defendant, which was accepted, and down to this date there was not a word said by the defendant to the complainant that the lease was non-existent, or that their relations were governed by anything other than the terms of the lease and agreement.

On May 12th, 1920, the complainant, with his attorney, called on the defendant and told him that he then desired to exercise his option, and at that time the defendant refused to make the

conveyance, saying that the complainant had not kept his agreement by making the deposit of $1,500.

On May 28th, 1920, the complainant tendered the $1,500 to the defendant, which tender was refused.

· This was followed by the defendant serving a notice on May 29th, 1920, on the complainant, which required him to quit the premises (stating that said premises were occupied by complainant as a tenant at will) on the 1st of September, 1920, and requiring him to deliver possession thereof on or before that date. The complainant, after the service of said notice, again paid to the defendant $275 rent for the month of June, and on the 12th of June served a formal notice declaring his option and demanding a deed.

The foregoing are the substantial facts in the case.

The principal point made by the defendant is that under the tenth clause of the lease, the deposit of the $1,500 was a condition precedent to the lease taking effect, and, therefore, as the sum was not paid, complainant became a tenant at will.

In passing on this question, the lease and agreement should be examined in their entirety and be construed together.

In exploring the intent of the parties as expressed in the lease, it will be sufficient to compare the fifth and tenth clauses in the light of the previous demise. If the defendant's views are accepted, they are in opposition—irreconcilable; if construed in the light of reason and the interpretation of the parties as shown by their words, acts and conduct, the two clauses harmonize. After the words of demise, the defendant covenants, in the fifth clause, that if the complainant pays the rent and performs the covenants aforesaid, he "shall and may peaceably and quietly have, hold and enjoy the demised premises for the term aforesaid." This is a plain covenant of peaceable possession, to which the complainant was entitled because he had paid the rent and performed the prior covenants in the lease.

The tenth clause, being subsequent to the fifth, the agreement therein is not a covenant to be kept and performed to entitle complainant to this peaceable possession under the fifth clause.

Turning to the tenth clause, the question arises how may it

be reconciled with the positive demise and covenant for peaceable possession?

The clause is ambiguous, in that inapt language was used in the selection of the words "before this lease becomes operative." The fair meaning of these words is "before September 1st, 1917;" and the clause itself merely contains an agreement, independent of the letting, that before September 1st, 1917, the date from which the lease speaks, he would deposit $1,500 with the defendant to secure a restoration, which gave to the defendant an independent suit to enforce this agreement without avoiding the lease.

This construction not only makes the entire lease congruous, but is in accord with the speech and course of conduct of the parties down to the breach between the parties, who were friends of long standing.

In passing on the case it is well to consider it from every angle. Suppose, between April 1st and September 1st, 1917, great depression had happened in real estate, and the complainant could rent, with an option of purchase, lands just as desirable at much less cost, and refused to make the deposit and enter into possession on September 1st, and defendant sued complainant for rent under this lease, could the complainant plead, saying, "Yes, I made the lease, and agreed that on September 1st, 1917, I would make a deposit of $1,500, but I declined to make the deposit which I agreed to make, but such deposit is a condition precedent to the validity of the lease, and not being made, the lease is void," how long would it take a court of justice to dispose of a plea of such character?

The complainant agreed to make the deposit; if he failed to do so the defendant had his remedy, and this he might waive.

The complainant is entitled to his decree.